Calling case 16-1007, Mark Kassa v. Detroit Metro Convention, et al. Oral argument not to exceed 15 minutes per side. Mr. Yaldo for the appellant. Good morning. I have reserved three minutes for rebuttal. May it please this Honorable Court, my name is Scott Yaldo. I'm pleased to be here before you. And it's a great intrinsic feeling to know that as a citizen of this great country we have access to the justice system and to the great courts of this country. And I want to take a minute to thank you for your service in that regard, in that branch of our government. This case arises out of Mr. Kassa's trademark slogan, Welcome to the D. Mr. Kassa, by way of background, is a musician, a well-versed one, a well-qualified one, one who has many credentials with many well-known national artists, a number of records out, t-shirts, hats, all promoting what he loves, which is the city of Detroit. It is what prompted him to trademark the slogan, Welcome, Welcome, Welcome to the D, which is sometimes slang for the city of Detroit. And it's his way of showing appreciation to all outsiders and all local Detroiters of his appreciation for the city, for its arts, and in his way to welcome them to that part of the region. The Detroit Visitors Bureau and the Detroit Sports Commission, although much more organized and much more funded than he is, practically do the same thing on a much larger scale. They're in essence competitors of his. The slogan in question here that Mr. Kassa brought a complaint against the defendants, or the appellees in this case, was, quote, Welcome to the D. The D is about the only letter in that whole slogan that references any sort of geographic reference. It is not the entire slogan, because the entire slogan doesn't geographically describe anything. It's more of a greeting. It's a salutation. It's, we accept you, welcome. The defendants, the appellees in this particular case, were able to persuade the lower court judge that the judge and the court there should focus on the term D, as opposed to the entire slogan. When determining whether the use of that slogan was in a trademark way or a non-trademark way, whether it was descriptive geographically in nature or not geographically descriptive. I'm veering off of the brief to some degree because I think there's no way I can eloquently say in the brief now what I articulated and more eloquently set forth in it over a period of time when I wrote it. So I want to focus on these things in terms of what is descriptive and what is non-descriptive geographically. Now the U.S. Patent and Trademark Office runs through a whole host of analyses in determining whether to even grant trademark protection. One of the ways in which the U.S. Patent and Trademark Office, using the Trademark Manual of Examining Procedures, determines that is to decide whether it's truly descriptive or not. Not only did they do so once, twice, but three times because Mr. Casa has three separate trademarks for that slogan. But on all three instances there was never an objection, there was never a denial, there was never anything raised that would question whether it was truly descriptive or not. In other words, what I'm suggesting is that it has passed muster for not being geographically descriptive. The fact that a letter within the entire slogan might have reference to a geographic location, as in Detroit, doesn't give the entire slogan that description. And that's where the lower court erred. The lower court erred because what it decided was that, and using Hensley as its principal backbone for the decision, is that we can't even get to the analysis of whether a particular trademark phrase was even infringed until and unless you show us in your complaint, not after discovery, not at trial, not at an evidentiary hearing, but in your complaint that the slogan or the trademark was used in a trademark way. And so in the lower court what they did was they acted as the judge, the jury, the fact finder, without the benefit of all of the evidence because they made a decision simply on the facts established in the complaint. Counsel, let me ask you this. What would constitute the use of that phrase in a trademark protected way or in a trademark protected use? The court below said that the use involved here was in a non-trademark way, but to your way of thinking, what would constitute a protected trademark use of that phrase? What the Detroit Visitors Bureau and the Detroit Sports Commission are doing are using the same exact slogan that he owns. It's his proprietary right and property, in the same manner that he's using it competitively in commerce to derive a profit. That is anti and inconsistent with fair use. In other words, that's Well, what constitutes a trademark protected use? If he takes the phrase and slaps it on a pair of jeans that has no connection necessarily with the city of Detroit, that might not pass muster as a trademark protected use, especially given the geographic connotations to the phrase. And what would be an example of a use that would be trademark protected of that phrase by your client? Well, according to the appellants, or rather appellees, we can never use our mark in a trademark protected way. I'm not asking you what their argument is. I'm asking you what your argument is. What's an example? An example would be to make reference to it in a newspaper article or to use it more or less in a description of southeast Michigan in terms of what other synonyms it may be referenced to. But truthfully, it's a salutation. But in what context? You're not really being specific. You're not being responsive to the question. Well, there's a reason for that. It's because I can't think of a way to use the slogan unless it's in the trademarked way. That's my point, is it's very difficult for me. I'm the exact opposite extreme of what they're going to try to say. They're trying to say that we can never use it in a non-trademarked way. I'm trying to say that every time you use it, it's in a trademarked way because you're using the actual slogan itself and you're plastering as the first and top portion of your advertisement, which only has that slogan and then your two logos at the bottom, which were the exhibits that were attached to our complaint when we filed it. At a 12B6 motion to dismiss the facts that we've alleged to show that they've used it unfairly, that they've used it in a trademarked way, rather, by using it as a source identifier as opposed to geographically descriptive. How have they used it as a source identifier? Because people who saw that slogan automatically referenced Mr. Casa because he's been using it for over 10 years in his business as a professional entertainer, in his promotional materials, in his radio show, Welcome to the D, in his song that he's recorded. People automatically phoned him and said, congratulations, I see your slogans all over the city now. That must be a great feeling. Obviously, there's been some confusion among the public, which is somewhat normal, but that's exactly what trademark infringement law is intended to guard against and to protect against. It's to protect the owner of a copyright, excuse me, of a trademark, to protect that person from third parties trying to usurp it, to try to hijack it, to try to make it theirs by diluting it. Pardon me for saying so, but the phrase didn't originate with your client, because I've lived in Detroit since 1972, and the phrase was there and being used long before your client trademarked it. I think the word, rather, the term D has certainly been around a little bit longer, but I think the term Welcome to the D is a new term, which my client created, and which my client has put the money and effort into promoting and advertising, and he's been using the brand. That's his brand. Everybody knows him when they buy his T-shirts and his hats and his records, that that's his brand. For it now to be included on posters by third parties, not just an excerpt of it, but the entire slogan itself is patently and blatantly a violation of the trademark infringement laws. The problem we have here is that the lower court didn't even go to part two of the analysis, didn't even go past whether it was used in a trademark way or not. It simply just made that decision without looking at the factors to determine whether it was used in a trademark way or not. It didn't look into whether there was good faith in its use and whether it was used fairly, which are two criteria to determine whether it was used in a trademark or a non-trademark way. Now, to use it in commerce against a competitor of yours who owns it collides in the face of using it in good faith. Mr. Casa, and of course the court doesn't know this, the lower court, because we never had a chance to do anything past the filing of the complaint. It was a 12B6 motion, the first responsive pleading. Didn't know that Mr. Casa's media company had reached out to the Visitors Bureau and the Sports Commission and gave them T-shirts that clearly showed the mark, welcome to the D, and it clearly had a registered trademark symbol on it. They all ordered T-shirts with their sizes on them, the people that sat on the board of these entities and third parties who are now the appellees. They all knew of its existing. They all said that at the moment we don't have any use for it, but then ultimately decided to use it nonetheless. Again, those are all facts and evidence that show that things were done in bad faith. We never got to that analysis. Now, even if you accept Hensley as being authoritative in this regard, Hensley stands apart from this case because Mr. Hensley himself has no way to describe himself other than the use of his name. So by virtue of using his name, he can't be charged with infringing on a copyright that he gave to his former employer, excuse me, a trademark that he gave to his former employer about a product he designed that bears his name. That use was not a trademark use. That's an instance in that case which is distinguishable from this. The Detroit Visitors Bureau can say to itself, welcome to Detroit, welcome to our region, welcome to southeast Michigan. They have a whole host of adjectives at their disposal. They don't have to use our slogan to do it. They showed no need or the must use the need or rather the required use of our slogan anywhere in their analysis, nor did the court delve into that. It's one thing to say we have no other choice but to use it. It's another thing to use it and say blatantly and come to court and have the court dismiss your case on the basis that we weren't using it in a trademark way. The question of whether it was used in a trademark way or not a trademark way has been found to be a question of fact by two other circuits. And it can't be that it would, I see my time is up, it can't be that it's a question of law at the initial stage of the pleading. And that's where we ask you in our brief to revisit the Hensley ruling on those grounds because of the erroneous analysis that led to that decision. Thank you. Thank you, counsel. Good morning. Todd Mandel on behalf of the defendants appellees. There are two reasons for this court to affirm the dismissal of the case. First, if one uses a mark in a non-trademark way, the trademark laws do not apply simply. This is part of the likelihood of confusion analysis that this type of case must undergo. Here you have a descriptive geographic greeting. Welcome to the D. We've cited to you cases that nicknames, et cetera, are treated exactly the same for trademark purposes as the geographical reference. So welcome to the D is effectively welcome to the Detroit under the law. The way the mark was used here was as a greeting. The Convention Bureau used it as a greeting, welcome to Detroit. And that is not a trademark way. What is the support for that? Number one, just common sense. Judge Clay, your question is a good indication of that. We also had submitted some material showing welcome to the D in use before. But just common sense. This is something that you're allowed to take into account. We've cited to you a case that says you can. That's obvious. Just out of curiosity, why did your client question the validity of the registration or challenge the validity of the registration? I don't know the exact answer. It could be they didn't know this was going on in 2006. It could be any other reason related to that. I don't actually know. I don't know that they even knew he was trying to register it ten years ago. What I can say, and this goes to his argument that, oh, look, the Patent Office registered it, that he's referring to what's called the incontestability issue. After a certain number of years, a trademark becomes incontestable. That does not matter for what we are here for. In order to prove a trademark infringement case, whether or not it is incontestable, he still must show the elements of trademark infringement, which include it has to be used in a trademark way, and we still have a fair use defense. If you were putting it on a hat, would he have a claim? I don't think so. As long as it is a greeting, welcome to Detroit, that is the non-trademark. That's a use in a non-trademark way. And when he trademarks something as common, descriptive, whatever lingo you want to put as that phrase, he took a risk that, by and large, he wouldn't be able to enforce the trademark against anyone using it as a greeting. So as long as it's used as a descriptive greeting. So how might it be used in a trademark way? I don't know if he could enforce it, practically speaking, in a trademark way if somebody is using it as a greeting. I don't know how else you use it. I suppose if it gained secondary meaning for something that was unrelated. So you look at Buick. I don't even know if Buick has a meaning, but it's now been so associated with one particular set of cars, when you say the name Buick, it's associated with cars, which normally would have nothing to do with each other. So if welcome to the D was plastered on some semiconductors and it became well-known, maybe there would be a secondary meaning for it. Okay, welcome to the D is so affiliated now with these semiconductors, I relate them. But anybody using it as a greeting, whatever it's on, it's on a banner, it's on a poster, it's on a hat, he took a risk by trademarking such a phrase that he could not ever realistically enforce. So do you believe that he uses it in a trademark way? No. I think if you look at his complaint, and we highlighted this on page four of our brief, in this court he cites his website, you go and look at what's on there. His references to the D and welcome to the D are all geographical references. And we listed them. I have a whole page on page four of our brief, and no, I think he uses it as a greeting. That's one of the points, is that if you even look at the way he uses it, he uses it as a descriptive greeting. And the courts, including the U.S. Supreme Court, KP Permanent is a case that's been cited in the materials, and the Hensley Court cites it and follows it. They said it better than I ever could, and it's worth listening to the two, three sentences from that case. The U.S. Supreme Court says the Lanham Act adopts a similar leniency, similar to the common law, there being no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words. If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well-known descriptive phrase. And then the U.S. Supreme Court cites loads of cases supporting that theory. By using this phrase... If he had the Welcome to the D shirt company that makes the best T-shirts in Michigan, would that be a trademark use? I don't think so, as long as it's on there as a greeting, Welcome to the D. I cannot think of a way, if it is literally on a sign, a banner, shirt, that the average person seeing it, unless they had some other affiliation with some city, not Detroit, that has nothing to it, maybe if you're in Cleveland, and it somehow became famous there. But no, as long as it's used as a greeting and it's descriptive, and especially geographically descriptive, he's going to have a very tough time enforcing that on anybody who uses it as a greeting. So I still, other than my semiconductor example, I don't have a great answer how he can... And I'm sure if we thought about other products it could be used for, maybe we could come up with a way. And most importantly for me, the way we used it, the way the Detroit Convention Metro Visitors Bureau used it, we used it as a greeting in a non-trademark way. That's what this case is about. And the incontestability point, which is what the original question was, is if you look in the statute itself, it does not matter if the mark becomes incontestable, he still must show these other things, and we still have a fair use defense. And that's also in another U.S. Supreme Court case, the Park and Fly case, also showed incontestability did not matter. And in the KP case, another U.S. Supreme Court case, in that case the mark had become incontestable, yet still the same analysis applied. So that's a nice piece of information, but it's not relevant for what we're actually here for today. The other cases, Hensley I want to talk about for a minute. Hensley essentially follows these KP U.S. Supreme Court case. It has similar language in it. Also, the holder of a trademark cannot prevent others from using the words that form the trademark in its primary or descriptive sense. The original descriptive primary meaning is always available for use by others. Hensley didn't make up that rule. It followed preexisting rules. Other courts have consistently held the same way. Another very good example that is comparable is the trademark infringement case, someone had brought it called MBH Enterprises in the Seventh Circuit. There, a radio station used, I love you Milwaukee. That was something that was using on its station. And there's no trademark infringement because, as the court stated there, the owner of a registered mark may not appropriate to itself common English slang terms and thus prevent others from using such phrases in their descriptive sense. The same, and we could go through many more analyses in similar cases. We put them in our briefs, so I'm not going to do it here. By making a formulaic recitation of the elements of a trademark infringement claim, it doesn't get saved. So non-trademark way, I think I've covered that. The second reason for affirming the dismissal is the fair use defense, which there's a statute, 15 U.S.C. 1115b4, which independently is a reason to bar their claim. Hensley also dealt with that. Hensley is from this court. It's only from 2009. It's not long ago. And it says there one can use words in their primary or descriptive sense even if there is some consumer confusion because the trademark owner assumes that risk by trademarking a descriptive term or phrase. You see this theme across the cases. Again, Hensley didn't come up with that. He used existing law. In re dual deck is another example, 12b6 dismissal affirmed on appeal for using a descriptive phrase in a non-trademark way. Other cases we've cited to you where 12b6 motions have been granted are in our brief as well. So for fair use, we've covered the descriptive sense, the way that welcome to the D is used in a descriptive sense. The other element for fair use defense is good faith. And here it is the plaintiff who actually under Hensley and in re dual deck for that matter, which is consistent, must allege facts from which an inference of bad faith can be drawn. You can't just come in and say there's bad faith. You have to actually have some facts. Cases make very clear. We've cited some. The Pac-Man case, the MBH case, Carfreshner. There are many more cases for the point that even if somebody knows about a trademark and then goes and does whatever it is they're being accused of doing, that's not sufficient to get this element in to avoid a fair use defense. So they can't just say maybe the convention bureau knew about the trademark. That's not sufficient to show a lack of good faith or to show bad faith. And the case law is clear on that. And there are a lot of it. And there are no allegations here that would indicate any bad faith. So based on the fair use defense and based on the lack of any trademark infringement because the mark was not used in the trademark way, the case should be dismissed. The primary argument here from the appellant is that Hensley, this court's case from 2009, should be overturned. But it should not be. First of all, it's based on good, logical common sense. It's based on U.S. Supreme Court law. It's consistent with that law. It's consistent with other circuits. And it is reasoned well and well supported. It's also correct under the Twombly and Iqbal standards for a 12B6 motion. The essential argument being made here is that you can never have a 12B6 motion granted in a trademark infringement case. And that's just simply wrong under the U.S. Supreme Court standards. There is no special exception exempting trademark cases from the 12B6 procedure. This court has cited to and followed the analysis of Hensley recently in the Grubbs v. Sheekley case. Judge Clay wrote the opinion in that case. That was at the end of last year. Hensley has been followed by district courts in this circuit as well as outside of this circuit. And there has been no problem following it and applying it. And several cases have granted 12B6 motions. The Grubbs did not. It had distinguished it, but the parameters of how you do the analysis was followed. So there's no reason to overturn Hensley. We can't anyway. Because you're just a separate panel from the – is that what you're – Yes. I mean, in this circuit at least one can't overturn another panel's published opinion. Okay. Also another reason. The other counts. So we've been talking about the trademark infringement count. All the other counts, there were four or five other counts here. All of them fail for the same reasons. The appellant has admitted on page 22 of its brief that it's the same test for all of the other counts. So if it doesn't pass muster under what we've already been talking about, then all the other counts fail. The only other item worth mentioning is there's a dilution claim. It fails for the same reasons, but it also fails because in order to bring a dilution claim, your mark must be famous, and you can't just allege my mark is famous. Famous types of marks are DuPont, Kodak, Budweiser, Camel, Barbie dolls, et cetera. Those are the cases that talk about what those are, and making a conclusory allegation that my mark is famous, which is what you've got here, isn't enough, and 12B6 motions are granted a fair amount, and we've cited cases where that's happened. This case is not a close call, and I would ask that you affirm the dismissal. Thank you. Thank you, counsel. Rebuttal? Well, you know, while it's not a requirement, the nature of a descriptive use strongly suggests that the mark used cannot adequately describe the goods or services that are offered by the infringing party without the use of the mark. We don't have that here. They have a whole host of things at their disposal, and I think counsel alluded to the fact that they've used it many times to say welcome to Detroit. Well, they could have said welcome to Detroit. They did not have to use a trademarked mark to advertise that, to make that point. The point is that they're a competing business with my client. They're capitalizing on his trademarked slogan that has reached uncontestable status to try to accomplish the same thing, and that is greeting people to the city of Detroit, welcoming them to the city of Detroit. Again, we have no problem with them doing that if they didn't use our mark. We do have a problem with them using our mark in order to effectuate the same thing we're doing. That's unfair competition. If the court, and counsel brought up the case of the Supreme Court case of KP Permanent Makeup, in which in that court the holding was that if you are going, if the lower court's going to say that a use was not, the use of a mark was not in a trademark way, you also have to further the analysis and make sure that the mark was used descriptively, not as a mark, fairly, and in good faith. We never got past anything other than it wasn't used in a trademark way. We never got to those other elements about whether it was used fairly or not, competitively or not. We never got to the argument of whether it was used in good faith or not, and we certainly didn't give credence or deference or accept the well-pleaded facts in our complaint where we alleged bad faith, that it wasn't used fairly. We certainly didn't accept them as true because if we did, there would be no way that a motion for summary, for dismissal on the 12B6 grounds could have been granted without a further analysis to ensure compliance with the KP Permanent Makeup case. Now, in short, I know you can't overturn another panel's decision in Hensley, but you can certainly clarify it because the broad effect that it's had is that any time a litigant files a trademark infringement case, it will end when someone brings up the Hensley case if a judge at that point decides that it wasn't used in a trademark way, unless and unless and until the judge further goes with the analysis under the Supreme Court case that I just referenced a couple times, the Permanent Makeup case, where in this case it simply never happened. Simply never happened. So for those reasons, I ask you very strongly to consider the request we made in our brief and to overturn the district court's findings. Thank you, counsel. The case will be submitted. Clerk may call the next case.